*KSC/06.13.25*



SDC - BALTIMORE
25 AUG 1 PM 12:53

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Northern Division*

| | | | |
|---|---|---|---|
| *Alex Kalim* | *Mailing Address:* | *Office Location:* | *DIRECT: 410-209-4850* |
| *Assistant United States Attorney* | *36 S. Charles Street, 4th Floor* | *36 S. Charles Street, 4th Floor* | *MAIN: 410-209-4800* |
| *Alex.Kalim@usdoj.gov* | *Baltimore, MD 21201* | *Baltimore, MD 21201* | *FAX: 410-962-0717* |

June 13, 2025

Summer Akhtar, Esq. and Elizabeth Lopez, Esq.
Office of the Federal Public Defender
100 S. Charles Street, Tower 2, 9th Floor
Baltimore, MD 21201

   Re:  <u>United States v. Huayi Zhong</u>,
       Criminal No. BAH-24-289

Dear Counsel:

   This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Huayi Zhong (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by **June 27, 2025**, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

   1.  The Defendant agrees to plead guilty to Count One of the Superseding Information, which charges the Defendant with Laundering of Monetary Instruments, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

Elements of the Offense

   2.  The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows: That on or about the time alleged in the Indictment, in the Eastern District of New York, the Defendant knowingly conducted a financial transaction affecting interstate commerce, which in fact involved the proceeds of specified unlawful activity, knowing that the property involved in the transaction represented the proceeds of some form of unlawful activity and that the transaction was designed, in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity.

## Waiver of Venue

3.      The Defendant knowingly and voluntarily waives any and all challenges to venue on any grounds, including all statutory, legal, equitable, or constitutional grounds, brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant consents to enter his plea of guilty in the District of Maryland and to have his sentence determined by a judge of that District Court.

## Penalties

4.      The maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|-------|---------|----------------|----------------|--------------------|--------------|--------------------|
| 1 | 18 U.S.C. § 1956(a)(1)(B)(i) | N/A | 20 years | 3 years | $500,000 or two times the amount involved | $100 |

a.      Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b.      Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c.      Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d.      Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

e.      Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

f.      Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the

United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

5.     The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a.      If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

<u>Advisory Sentencing Guidelines Apply</u>

6.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

<u>Factual and Advisory Guidelines Stipulation</u>

7.      This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein.

a.      This Office and the Defendant further agree that the applicable base offense level is **12**, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 2S1.1(a)(2)[1] and

---

[1] The parties agree that even if the defendant committed—or would be accountable for—the underlying drug trafficking offense giving rise to the money laundering, the offense level for that drug trafficking offense cannot be determined. Accordingly, the parties agree that the defendant's base offense level should be based on U.S.S.G. § 2S1.1(a)(2) rather than (a)(1).

2B1.1(b)(1)(C), reflecting an addition of 4 levels to the starting level of 8 to account for the Defendant laundering more than $15,000 but less than $40,000.

      b.     The parties agree to an **increase of 6 levels**, pursuant to U.S.S.G. § 2S1.1(b)(1), because the Defendant knew or believed that any of the laundered funds were the proceeds of an offense involving the manufacture, importation, or distribution of a controlled substance.

      c.     The parties agree to an additional **increase of 2 levels**, pursuant to U.S.S.G. § 2S1.1(b)(2)(B), because the Defendant is pleading guilty to an offense under 18 U.S.C. § 1956.

      d.     The parties agree to a **4-level reduction** in the adjusted offense level, pursuant to U.S.S.G. § 3B1.2(a), because the Defendant was a minor participant in the criminal activity.

      e.     The parties agree to an additional **2-level reduction** in the adjusted offense level, pursuant to U.S.S.G. § 4C1.1(a), because the defendant meets all the criteria described in Section 4C1.1. This agreement is contingent upon a final determination that the defendant receives zero criminal history points under U.S.S.G. § 4A1.1.

      f.     This Office does not oppose a **2-level reduction** in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a) based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

      The final adjusted offense level for Count One is therefore **12**.

      8.     There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level.

      9.     Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

### Rule 11 (c) (1) (C) Plea

      10.     The parties stipulate and agree pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) that a sentence of **36 months of probation** is the appropriate disposition of this case, taking into consideration the nature and circumstances of the offense, the Defendant's criminal history, and all of the other factors set forth in 18 U.S.C. § 3553(a). In the event that the Court

rejects this Agreement, except under the circumstances noted below, either party may elect to declare the Agreement null and void. Should the Defendant so elect, the Defendant will be afforded the opportunity to withdraw his plea pursuant to the provisions of Federal Rule of Criminal Procedure 11(c)(5). The parties agree that if the Court finds that the Defendant engaged in obstructive or unlawful behavior and/or failed to acknowledge personal responsibility as set forth herein, neither the Court nor the Government will be bound by the specific sentence contained in this Agreement, and the Defendant will not be able to withdraw his plea.

## Obligations of the Parties

11.     The parties agree to recommend a sentence of **36 months of probation.**  This Office and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Information.  At the time of sentencing, this Office will move to dismiss any open counts against the Defendant

## Waiver of Appeal

12.     In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever.  This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Forfeiture

13.     The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable

6

to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

14.    Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities: a forfeiture money judgment in the amount of $17,000.

15.    The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

16.    The Defendant agrees to assist fully in the forfeiture of the above property.  The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

17.    The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint.  The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

18.    The Defendant further waives all challenges and will not seek review on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through administrative or civil claims or answers, to any administrative and/or civil forfeiture proceedings conducted against the following assets:  (1) approximately $57,695 in U.S. currency and (2) a Rolex wristwatch, both seized during the execution of a search and seizure warrant at 19 Tony Court, Staten Island, New York on or about September 24, 2024 (collectively, the "Additional Assets").  The Defendant will not assist any third party with any challenge or review or any petition for remission of forfeiture with regard to the Additional Assets.

### Defendant's Conduct Prior to Sentencing and Breach

19.    Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful

in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20.     If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

## Court Not a Party

21.     The Court is not a party to this Agreement. Subject to paragraph 10 above, the sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

22.     This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

8

Very truly yours,

Kelly O. Hayes
United States Attorney

Alex Kalim
Assistant United States Attorney

Alexander Levin
Assistant United States Attorney

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

6/16/2025
Date

Huayi Zhong
Huayi Zhong

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

6/16/2025
Date

Summer Akhtar, Esq.
Attorney for the Defendant

6/16/2025
Date

Elizabeth Lopez, Esq.
Attorney for the Defendant

9

## ATTACHMENT A

### STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

An investigation that began in early 2023, led by the Drug Enforcement Administration (DEA), Baltimore Division, and Homeland Security Investigations (HSI), Baltimore Division, into two separate non-fatal shootings of Michael Micklos Jr. in Baltimore, Maryland revealed a sprawling network of individuals laundering millions of dollars generated from the illegal distribution of massive quantities of marijuana. In general, Michael Micklos and Malik Bridgers orchestrated the sale of bulk quantities of marijuana in Maryland, as well as in other states (including Virginia and New York). Micklos, Bridgers, and their co-conspirators would then transport the proceeds of those sales to a larger network of money launderers, primarily operating in the New York and New Jersey area and reporting to Can Xu. Xu and his network would, in turn, commingle the proceeds from Micklos' and Bridgers' organizations with other drug trafficking proceeds before transporting (via various means) the bulk U.S. currency to other money launderers and drug traffickers in Oregon, Washington, and elsewhere. All of the movement of proceeds was undertaken with the purpose of (1) using the proceeds as payment for further shipments of marijuana that would then be sold and (2) concealing the true nature and source of the proceeds.

Over the course of the investigation, agents recovered from co-defendants and other members of the conspiracy: over $6 million in U.S. currency, over 2,500 pounds of marijuana, firearms, and ammunition.

Huayi Zhong, the Defendant, was identified in the course of this investigation as being involved in the conspiracy as a courier transporting marijuana and laundering drug trafficking proceeds at the direction of co-defendant Xu.

Specifically, on June 1, 2024, in the Eastern District of New York, the Defendant received approximately $17,000 in U.S. currency, which was the proceeds of drug trafficking. Specifically, investigators intercepted a June 1, 2024 call[2] between the Defendant and co-defendant Zebin Liu, also a member of Xu's network. On the call, the Defendant stated that an unidentified individual had transported U.S. currency to the Defendant, comprised of "$17,000, including $5,000 in salary—salary for one month—and $2,000 for something separate . . . and $10,000 for what you did yesterday." The Defendant further acknowledged on this call that he would transfer the money to Liu.

---

[2] To the extent any of the calls described in this statement occurred in languages other than English, the Defendant agrees that the provided summaries and/or English translations accurately describe the substance of the conversations.

The Defendant agrees that the above-described financial transaction affected interstate and foreign commerce and involved the proceeds of drug trafficking. The Defendant agrees that he knew that the property involved in the financial transaction was the proceeds of drug trafficking. The Defendant further agrees that he conducted the financial transaction knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of drug trafficking.

Investigators are not aware of any evidence that the Defendant is personally familiar with Micklos or Bridgers, nor that he has any knowledge of the larger money laundering network described above. However, through a combination of intercepted communications, surveillance, and other evidence, agents determined that the Defendant personally acted as a courier for marijuana and/or drug trafficking proceeds on numerous other occasions, including the below examples:

<u>June and July 2024 Package Interception</u>

In late June and into early July, Xu—working with co-conspirators Qihai Tao, Isaac Huynh, and the Defendant—attempted to send approximately $679,050 to co-conspirator Chunbing Qin as payment for the supply of marijuana.

Specifically, on June 18, 2024, Xu directed the Defendant to take money to Huynh's residence at 1914 West 10th Street, Apartment R1, Brooklyn, New York. At 11:38 p.m., the Defendant called Huynh and said that he would be there in "twenty minutes to hand off some paper [money]." Agents observed the Defendant leave his residence with a heavy bag containing drug trafficking proceeds, which he transported to Huynh's residence, arriving at approximately 12:02 a.m. Roughly twenty minutes later, Xu called Qin and reported, "Ten units has been delivered."

On June 27 and 28, 2024, Huynh shipped four packages (two each day) via FedEx to an address in Oregon.

On June 30, 2024, at approximately 11:36 p.m., Xu transported a bag containing drug trafficking proceeds to Huynh's residence and handed the bag directly to Huynh. The next day, July 1, 2024, Huynh again shipped two packages via FedEx to the same address.

All six packages were interdicted by law enforcement. Pursuant to search and seizure warrants, agents searched the packages and found approximately $679,050 in U.S. currency. On July 1, 2024, at approximately 10:11 p.m., Xu called Tao and said, "Motherfucker! The Seattle paper route I sent money with got busted today. Holy shit!" Later in the call, Tao asked, "Was it a lot, the loss?" Xu replied, "Seventy units," referring to approximately $700,000. Other intercepted calls confirmed that the money had been intended to reach Qin.

Investigators are not aware of any evidence that the Defendant knew of or was involved in the conduct that occurred after he made the June 18, 2024 delivery, all of which was discovered through law enforcement's investigation, nor that the Defendant was personally involved in the July 2024 conversations between Xu, Tao, and Qin.

<u>August 1, 2024 Money Dropoff and Marijuana Resupply</u>

On August 1, 2024, Xu coordinated a meeting between members of his and Micklos' organizations for the purpose of providing marijuana to Micklos for distribution and collecting drug trafficking proceeds from Micklos for further laundering.

Specifically, on July 31, 2024, Micklos arranged for co-conspirators Steven Mack and William Brown, III to drive to the New York City area. On August 1, 2024, at approximately 8:53 a.m., Micklos called Mack and said that "he [Xu] said, uh, he called his people and putting everything together now." Later in the call, Micklos confirmed that "it's only two-hundred and, like, fifty," referring to 250 pounds of marijuana.

As confirmed by agent surveillance, at approximately 9:45 a.m. Mack drove to a restaurant near CubeSmart Self Storage, located at 266 Wild Avenue, Staten Island, New York. Investigators later confirmed through surveillance that Brown was in the car at the time. At approximately 11:45 a.m., Mack called Xu, who told Mack "I think we . . . we . . . we can do at the . . . uh . . . at the hotel parking lot, so just wait there. I'm . . . I'm . . . I'm telling my guy to drive over there . . . as soon as possible." Shortly after that call, Mack drove a short distance to Fairfield Inn and Suites, located at 290 Wild Avenue, Staten Island, New York.

At approximately 12:29 p.m., Xu called Mack and said, "Yo, they . . . they are there but, uh, it's on the next door. The storage unit parking lot." Mack then drove from the hotel parking lot to the CubeSmart parking lot. At approximately 12:41 p.m., the Defendant and co-conspirator Liu arrived; several bags containing approximately 250 pounds of marijuana were then transferred from the Defendant's vehicle to Mack's vehicle. Investigators are not aware of any evidence that the Defendant was personally involved in the above-described calls, nor that was he personally familiar with Mack or Brown.

After this transfer, the Defendant and Liu drove to 715 Katan Avenue, Staten Island, New York—Liu's residence—arriving at approximately 1:01 p.m. The Defendant carried a bag, containing drug trafficking proceeds, into the residence, and at approximately 1:24 p.m., Liu exited the residence carrying a bag back to his own vehicle, which he then drove away.

12

SO STIPULATED:

_____
Alex Kalim
Assistant United States Attorney

_____
Alexander Levin
Assistant United States Attorney

_____
Huayi Zhong
Defendant

_____
Summer Akhtar, Esq.
Counsel for Defendant

_____
Elizabeth Lopez, Esq.
Counsel for Defendant